COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Beales and Senior Judge Annunziata
Argued by teleconference.

DERRICK RENARD POWELL

OPINION BY
v.       Record No. 1825-12-3        JUDGE ROSEMARIE ANNUNZIATA
NOVEMBER 26, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Patrick F. Yeatts, Judge

M. Kevin Bailey for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Derrick Renard Powell, appellant, was tried by a judge of the Circuit Court for the City of

Lynchburg and found guilty of distribution of an imitation Schedule I or II substance, in violation of

Code § 18.2-248. Appellant appeals the judgment of conviction on the following grounds: 1) the

trial court erred in finding that the evidence was sufficient to convict appellant of distribution of an

imitation controlled substance because the Commonwealth failed to prove beyond a reasonable

doubt that the substance was not a controlled substance subject to abuse; 2) the trial court erred in

finding that the evidence was sufficient to convict appellant of distribution of an imitation controlled

substance because the Commonwealth failed to prove beyond a reasonable doubt that the form of

the substance was such that it would be mistaken for cocaine; and 3) the trial court erred in finding

that the evidence was sufficient to convict appellant of distribution of an imitation controlled

substance because the Commonwealth failed to prove beyond a reasonable doubt that appellant

made any express or implied representations that the substance was cocaine. For the reasons that

follow, we affirm.

Background

"In examining a challenge to the sufficiency of the evidence, appellate courts will review the evidence in the light most favorable to the party prevailing at trial and consider any reasonable inferences from the proven facts." Towler v. Commonwealth, 59 Va. App. 284, 290, 718 S.E.2d 463, 466 (2011); see also Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010). Moreover, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "That responsibility lies with the fact finder because '[t]his [C]ourt[,] sitting as an appellate court, and knowing nothing of the evidence or of the witness, except as it appears on the paper, [is] incompetent to decide on the credibility of the testimony.'" Commonwealth v. McNeal, 282 Va. 16, 22, 710 S.E.2d 733, 736 (2011) (quoting Brown v. Commonwealth, 29 Va. (2 Leigh) 769, 777 (1839)).

Seen in the light most favorable to the Commonwealth, the evidence showed that on December 22, 2011, Investigator Daniel Bailey and Detective Trent were working undercover in an unmarked police vehicle. Bailey was assigned to the narcotics department of the Lynchburg Police Department for over five years, during which time he handled over 100 arrests and investigations involving the sale of narcotics. While driving through an open air drug market in Lynchburg, Bailey and Trent saw appellant standing on a sidewalk. When appellant "made a [waving] motion with his hand as [if] to flag [the officers] to pull the car over," Trent, who was driving, complied. When the vehicle was stationary at the side of the road, appellant walked up to Bailey, who was sitting in the passenger seat of the car. Bailey rolled down the window and asked appellant "if he was straight." Bailey explained that "straight" is "common slang" used in drug transactions to indicate that the seller has narcotics to sell. Appellant responded that he "had what [Bailey] needed

and asked what [Bailey] wanted." Bailey responded he wanted "a four." Bailey explained a "four" is "slang for forty dollars['] worth of cocaine."

After a short conversation about whether Bailey and Trent were with the police, appellant told Bailey he could get "the four" from his residence. Appellant then went into a house and returned to the car within two minutes. He handed Bailey a "white rock substance" in "a knotted baggie," and Bailey gave him forty dollars. The exchange took "[a] matter of seconds," and Bailey did not examine the substance closely before he and his partner drove away. Later, upon examination, he discovered appellant had sold him a white pill, cut in half.

At trial, Bailey testified that crack cocaine is a "hard form of powder cocaine." Bailey stated that the substance, wrapped in the knotted plastic baggie, that appellant handed him appeared "to the naked eye" to be crack cocaine. He explained that, in his experience, most drug transactions happen "very fast" and "last[] thirty seconds at most." Bailey further explained that "in the sale of narcotics, there are no disclaimers that say [']this is actually crack cocaine[.']" A buyer must "take [the seller's] word" that the substance purchased is crack cocaine.

Kelly Howerter, a forensic scientist at the Virginia Department of Forensic Science examined and analyzed the substance appellant sold Bailey. She testified "just looking at it . . . it was a plastic bag corner that just had a white substance inside of it." She described the substance inside the bag as half of a white oblong tablet and stated it did not resemble cocaine. She identified the substance as the Schedule VI controlled substance quetiapine. When the Commonwealth recalled Bailey as a witness, he testified that he had never heard of quetiapine being sold illicitly.

Appellant made a motion to strike at the end of the evidence based, in part, on the use of slang in the transaction to purchase cocaine and the absence of evidence establishing that appellant understood the term was a reference to cocaine. He further argued that the drug sold was, in fact, a

Schedule VI controlled substance and, at most, his conduct supported a misdemeanor conviction under Code § 18.2-248(F). The motion was denied. In his reasoning, the trial judge noted:

> I understand that [during] these transactions individuals aren't using the word[ ] cocaine and, clearly, if anyone approached a drug dealer and said they needed cocaine it would be out of the ordinary, not a normal occurrence and that this slang and these words are used to mean something in the drug trade in this community and other communities like this and these drugs don't come with written warranties and they don't come with guarantees and they don't come with documentation.
>
> [T]he Court has to look at all the evidence in this case, and what we have here is an exchange between [the defendant] and the undercover detective and language used, are you straight, I have what you need, and the detective indicating he needed a four. [Bailey] testified that in the drug trade that means forty dollars exchanged for a controlled substance. And that's what he received or at least thought he was receiving in exchange for his forty dollars.

Appellant subsequently argued in a motion to set aside the verdict that the Commonwealth failed to prove, *inter alia*, that quetiapine was not a controlled substance subject to abuse. During the course of the proceedings on the motion, the court found the Commonwealth satisfied both sections (1) and (2) of Code § 18.2-247(B)(ii).[1] The trial court denied the motion to set aside the

---

[1] 1 Code § 18.2-247(B) provides:

> The term "imitation controlled substance" when used in this article means (i) a counterfeit controlled substance or (ii) a pill, capsule, tablet, or substance in any form whatsoever which is not a controlled substance subject to abuse, and:
>
> 1. Which by overall dosage unit appearance, including color, shape, size, marking and packaging or by representations made, would cause the likelihood that such a pill, capsule, tablet, or substance in any other form whatsoever will be mistaken for a controlled substance unless such substance was introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate; or
>
> 2. Which by express or implied representations purports to act like a controlled substance as a stimulant or depressant of the central nervous system and which is not commonly used or recognized for

verdict, particularly noting that there was "no evidence before this Court that what was being sold here[,] which essentially as I understand the case or the evidence to be[,] it was some sort of antibiotic that there's any effect of antibiotics that caused them to be subject to abuse."

Analysis

Appellate courts "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 12 (2004) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). As stated previously, we view the evidence in the light most favorable to the prevailing party below, relying on the fact finder's credibility determinations and the proven facts. Further, "[c]ircumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)). Finally, the Court may not substitute its own judgment for that of the finder of fact, even if it might have reached a different conclusion. See Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998); Crowder v. Commonwealth, 41 Va. App. 658, 663 n.1, 588 S.E.2d 384, 387 n.1 (2003).

To the extent this Court must construe Code § 18.2-247 in considering the assignments of error, the Court applies a "*de novo* standard of review when addressing a question of statutory construction." Courtney v. Commonwealth, 281 Va. 363, 366, 706 S.E.2d 344, 345 (2011). "The rules of statutory construction provide that the 'plain, obvious, and rational meaning of a statute is

use in that particular formulation for any purpose other than for such stimulant or depressant effect, unless marketed, promoted, or sold as permitted by the United States Food and Drug Administration.

always preferred to any curious, narrow or strained construction.'" Werres v. Commonwealth, 19 Va. App. 744, 746, 454 S.E.2d 36, 37 (1995) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)). "The primary objective of statutory construction is to ascertain and give effect to legislative intent." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). Thus, this Court construes a statute "with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003). "'When interpreting statutory language, [this Court] must assume that the legislature chose with care the words it used and, where it includes specific language in one section but omits that language from another section, [this Court] presume[s] that the exclusion of the language was intentional.'" Saunders v. Commonwealth, 48 Va. App. 196, 203-04, 629 S.E.2d 701, 704 (2006) (quoting 7-Eleven, Inc. v. Dep't of Envtl. Quality, 39 Va. App. 377, 397, 573 S.E.2d 289, 299 (2002)).

Appellant contends the trial court erred in convicting him because the Commonwealth failed to prove that the substance appellant sold was an imitation controlled substance that "would be mistaken for cocaine" and that he did not make "any express or implied representations that the substance was cocaine." These arguments are without merit. To convict appellant of violating Code § 18.2-248, the Commonwealth was required to prove he distributed an imitation controlled substance. Code § 18.2-248(A). Code § 18.2-247(B)(ii)(1) defines an imitation controlled substance as:

> a pill, capsule, tablet, or substance in any form whatsoever which is *not a controlled substance subject to abuse*, and . . . [w]hich by overall dosage unit *appearance, including color, shape, size*, marking and *packaging* or by *representations made*, would cause the likelihood that such a pill, capsule, tablet, or substance in any other form whatsoever will be mistaken for a controlled substance.

(Emphasis added.)

This Court further clarified the definition of an imitation controlled substance in Werres, 19 Va. App. at 747-48, 454 S.E.2d at 38, holding an imitation controlled substance is "any pill, capsule, tablet, or substance in any form whatsoever that by express or implied representation is *intended* or *appears* to imitate a controlled substance subject to abuse." The Werres Court also made clear that the Commonwealth must prove the "substance is 'not a controlled substance subject to abuse'" to satisfy the provisions of Code § 18.2-247. Id. at 748, 454 S.E.2d at 38.[2]

We conclude that appellant's representations regarding the substance, together with the packaging of the substance in a plastic knotted baggie, made it likely that the substance would be mistaken for crack cocaine as required by Code § 18.2-247. The Commonwealth's evidence proved that appellant sold Bailey quetiapine, a Schedule VI drug, that was consistent with crack cocaine's color, size, hard form and shape, while wrapped in the knotted plastic baggie. Indeed, the evidence showed the substance appellant sold was not only mistakable for crack cocaine, but, during the heat of a quick transaction, it was, in fact, mistaken for crack cocaine by an experienced undercover police officer who did not realize the item was not crack cocaine until he had the opportunity to closely examine it. The drug sale took place in an open air drug market and was initiated by appellant by motioning the undercover officers to the side of the road as they drove through the area. Bailey testified he asked for a "four" and such language is commonly used in the drug trade to mean forty dollars' worth of crack cocaine. The trial court found Bailey's testimony to be credible and gave due weight to his testimony that a "four" is common drug parlance for forty dollars' worth of crack cocaine. We will not disturb that finding. In response to Bailey's request for a "four," appellant handed Bailey a knotted baggie containing "a white rock substance," consistent with his

---

[2] In Rhodes v. Commonwealth, 12 Va. App. 473, 404 S.E.2d 522 (1991), this Court defined "subject to abuse" under Code § 18.2-247. "'Subject to' means 'having a disposition or tendency; liable (to).' 'Abuse' means 'to use wrongly; misuse.'" Id. at 475, 404 S.E.2d at 522 (quoting Webster's New World Dictionary (2d College Ed. 1970)).

request, and accepted forty dollars in payment. To the "naked eye," the white substance in the packaging appeared to be crack cocaine. It was not until Bailey had the opportunity to examine the substance, after the officers left the scene, that Bailey discovered it was half of a white pill.

Not only was the appearance of the substance consistent with crack cocaine when it was wrapped in the plastic baggie, appellant implied it was crack cocaine when he responded to Bailey's request with what appeared to be forty dollars' worth of crack cocaine and accepted forty dollars in payment. See Werres, 19 Va. App. at 747-48, 454 S.E.2d at 38 (representations may be implied, rather than express). His actions demonstrated he intended the packaged pill to imitate crack cocaine. The pill's appearance and packaging, coupled with appellant's representations, established the substance was presented in such manner as to cause Bailey to mistake the substance for crack cocaine. Therefore, the evidence was sufficient to prove the substance was an imitation controlled substance.

Appellant further argues, however, that the trial court erred in finding that the evidence was sufficient to convict him of distribution of an imitation controlled substance because the Commonwealth failed to prove beyond a reasonable doubt that the substance was not a controlled substance "subject to abuse." This argument is also without merit.

In addressing appellant's motion to strike the verdict, the trial court rejected the argument that the Commonwealth was required to prove the substance at issue "was not subject to abuse." Nevertheless, the trial court ultimately found that quetiapine, classified as a Schedule VI controlled substance, is not subject to abuse.

We likewise conclude that the substance the defendant sold was a Schedule VI controlled substance and such classification, *ipso facto*, established that the substance was not subject to abuse. Pursuant to the Drug Control Act (Code § 54.1-3400 *et seq*.), the Board of Pharmacy ("Board") categorizes known controlled substances into various schedules. Code §§ 54.1-3401, 54.1-3443. In

- 8 -

categorizing the substances, one of the factors the Board considers is "the actual or relative potential for abuse" of a substance. Code § 54.1-3443(1). In designating what substances the Board should place in Schedules I through V, the General Assembly explicitly addressed the potential for abuse, each Schedule noting a lower risk of abuse relative to the previous Schedule. See Code §§ 54.1-3445, 54.1-3447, 54.1-3449, 54.1-3451, 54.1-3453. Given the General Assembly's omission of the "potential for abuse" factor in articulating the factors the Board should consider when placing substances in Schedule VI, it follows that Schedule VI substances are not "subject to abuse" as contemplated in Code § 18.2-247.[3] Therefore, as a matter of definition, established by the legislature, quetiapine is a Schedule VI controlled substance, but one that is not subject to abuse. Therefore, the trial court correctly held it was an imitation controlled substance.

Accordingly, the trial court did not err by finding sufficient evidence that appellant distributed an imitation controlled substance. We affirm appellant's conviction.

Affirmed.

---

[3] Code § 54.1-3455 states that Schedule VI controlled substances include:

> 1. Any compound, mixture, or preparation containing any stimulant or depressant drug exempted from Schedules III, IV or V and designated by the Board as subject to this section.

> 2. Every drug, not included in Schedules I, II, III, IV or V, or device which because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not generally recognized among experts qualified by scientific training and experience to evaluate its safety and efficacy as safe for use except by or under the supervision of a practitioner licensed to prescribe or administer such drug or device.

> 3. Any drug not included in Schedules I, II, III, IV or V, required by federal law to bear on its label prior to dispensing, at a minimum, the symbol "Rx only," or which bears the legend "Caution: Federal Law Prohibits Dispensing Without a Prescription" . . . .