PRESENT: Lemons, C.J., Goodwyn, Millette, Mims, McClanahan,
and Powell, JJ., and Lacy, S.J.

DERRICK RENARD POWELL

OPINION BY
v.  Record No. 132028        CHIEF JUSTICE DONALD W. LEMONS
                                    January 8, 2015
COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the evidence was
sufficient to sustain a conviction for distribution of an
imitation Schedule I or II controlled substance where the
substance actually distributed was a Schedule VI controlled
substance. We also consider whether the evidence was
sufficient to establish that the substance was in a form such
that it could be mistaken for a Schedule I or II controlled
substance, and whether the defendant made any express or
implied representations that the substance was a Schedule I or
II controlled substance.

I. Facts and Proceedings

Derrick Renard Powell ("Powell") was tried by the Circuit
Court of the City of Lynchburg ("trial court") upon an
indictment charging distribution of an imitation Schedule I or
II controlled substance, in violation of Code § 18.2-248.
Powell was found guilty and sentenced to three years'
imprisonment, with one year and ten months suspended.

1

At trial, Detective Daniel M. Bailey ("Bailey") testified that he was working undercover in Lynchburg on December 22, 2011, when he drove through an area he described as "an open air drug market." He observed Powell on the side of the road, and as Bailey drove by, Powell made a waving motion with his hand to get Bailey to pull over. Bailey rolled down his window and when Powell walked up to him, Bailey asked him if "he was straight." Bailey testified that phrase "is a common slang in the drug trade to see if he had any product on him. Anything for sale."

Bailey testified that Powell stated that "he had what I needed and asked what I wanted." Bailey responded that he needed "a four," which is slang for 40 dollars worth of cocaine. Taylor then went into his house, which was close by; and when he returned, he dropped a clear plastic baggie containing "a white rock[-like] substance" into Bailey's hand, and Bailey gave him 40 dollars in cash. Bailey testified that he took the substance back to his office and thereafter mailed it to the lab.

Bailey testified that the substance was a "[h]ard white rock[-like] substance," and that crack cocaine is also a hard, white, rock-like substance. When Bailey was shown the substance in court, he testified that to his "naked eye" it looked like crack cocaine. On cross-examination, Bailey

2

admitted that when he got back to the police station after the exchange and examined the substance, he realized that it was a white pill cut in half. He also testified that it was packaged in a "knotted baggie."

Kelly Howerter ("Howerter") is a forensic scientist with the Virginia Department of Forensic Science who analyzed the substance Powell sold to Bailey. She testified that the substance was quetiapine, which is a Schedule VI controlled substance in Virginia. See Code § 54.1-3455(2). When the Commonwealth's Attorney asked what quetiapine was, Howerter testified it was out of her realm of experience, but that she believed it was some kind of "antibiotic type prescription pill."[*] Howerter testified that the substance was white and solid, and was one half of an oblong shaped pill. She testified that she had never seen crack cocaine in a pill form, but what she received looked like "a plastic bag corner that just had a white substance inside of it." Howerter testified that she was unaware if quetiapine was ever mixed with cocaine.

The Commonwealth rested, and Powell made a motion to strike. He argued that he could not be convicted of

---

[*] Quetiapine is actually a type of antipsychotic drug approved for the treatment of schizophrenia, bipolar disorder, and along with an antidepressant for treatment of major depressive disorder. See National Institutes of Health, Quetiapine, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019.html (last visited Nov. 3, 2014).

3

distributing an imitation controlled substance because the substance was already a controlled substance, so he could only be a convicted of a misdemeanor for selling a Schedule VI drug. The trial court denied the motion to strike, reasoning that:

> [T]he gravamen of this offense is possession of a[n] imitation of a controlled substance and the intent to distribute that substance passing it off as a controlled substance and the focus is not on what the imitation consists of but rather what is being imitated with the controlled substance or the imitation controlled substance and what the intent of the defendant is trying to pass that substance off as.

The defense rested and Powell renewed his motion. Powell reiterated his previous argument that the substance at issue was already a controlled substance. He also argued that he never said or indicated that he was selling Bailey cocaine, and he argued that the substance did not have the appearance of cocaine since it was just a white pill cut in half. The trial court denied the motion to strike and found Powell guilty of the charge.

Powell appealed his conviction to the Court of Appeals of Virginia. The Court of Appeals issued a published opinion in which it affirmed Powell's conviction. Powell v. Commonwealth, 62 Va. App. 579, 750 S.E.2d 229 (2013). First, the Court of Appeals held that Powell's "representations regarding the substance, together with the packaging of the substance in a

4

plastic knotted baggie, made it likely that the substance would be mistaken for crack cocaine as required by Code § 18.2-247." Id. at 588, 750 S.E.2d at 233. Second, the Court of Appeals held that although the substance was a controlled substance, because it was a Schedule VI substance, such classification established that it was not subject to abuse. Id. at 590, 750 S.E.2d at 234. Accordingly, the Court of Appeals concluded that the trial court did not err in holding the evidence was sufficient to convict Powell of distributing an imitation controlled substance. Id. at 591, 750 S.E.2d at 234.

Powell filed a petition for appeal in this Court, and we awarded him an appeal on the following assignments of error:

1. Under Section 18.2-247(B)(ii) of the Code of Virginia, 1950, as amended, the trial court erred in finding that the evidence was sufficient to establish that the substance Appellant gave to Investigator Bailey was not a controlled substance subject to abuse, and, in affirming the trial court's decision, the Court of Appeals erred in both applying a statutory construction to Section 18.2-247(B)(ii) to link the phrase "subject to abuse" to the Drug Control Act (Section 54.1-3400 et seq.) and in its application of the statutory construction.

2. Under Section 18.2-247(B)(1) of the Code of Virginia, 1950, as amended, the trial court erred in finding that the evidence was sufficient to establish that the substance was in a form such that it would be mistaken for cocaine, and the Court of Appeals erred in affirming the trial court's decision.

3. Under Section 18.2-247(B)(2) of the Code of Virginia, 1950, as amended, the trial court erred in finding that the evidence was sufficient to establish that Appellant made any express or implied representations that the

5

substance was cocaine, and the Court of Appeals erred in affirming the trial court's decision.

## II. Analysis

### A. Standard of Review

"When reviewing a defendant's challenge to the sufficiency of the evidence to sustain a conviction, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014) (internal quotation marks, alterations, and citation omitted). "The lower court will be reversed only if that court's judgment is plainly wrong or without evidence to support it." Id. at 72, 752 S.E.2d at 859 (internal quotation marks omitted). To the extent we must interpret a statute, that is a question of law that we review de novo. See Woodard v. Commonwealth, 287 Va. 276, 280, 754 S.E.2d 309, 311 (2014).

### B. Code § 18.2-247(B)(ii)

Powell was convicted of violating Code § 18.2-248, which makes it a felony to distribute an imitation controlled substance. The term "imitation controlled substance" is defined in Code § 18.2-247(B) to mean:

> (i) a counterfeit controlled substance or (ii) a pill, capsule, tablet, or substance of any form whatsoever which is not a controlled substance subject to abuse, and

6

1. Which by overall dosage unit appearance, including color, shape, size, marking and packaging or by representations made, would cause the likelihood that such a pill, capsule, tablet, or substance in any other form whatsoever will be mistaken for a controlled substance unless such substance was introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate; or

2. Which by express or implied representations purports to act like a controlled substance as a stimulant or depressant of the central nervous system and which is not commonly used or recognized for use in that particular formulation for any purpose other than for such stimulant or depressant effect, unless marketed, promoted, or sold as permitted by the United States Food and Drug Administration.

(Emphasis added.) There was no allegation or evidence presented that Powell distributed a "counterfeit controlled substance." In this case, the Commonwealth was required to prove that the substance Powell distributed was "a pill, capsule, tablet, or substance in any form whatsoever <u>which is not a controlled substance subject to abuse.</u>" (Emphasis added.) On appeal, Powell does not dispute that he distributed a substance to Bailey. There is also no dispute that the substance Powell distributed was quetiapine, a Schedule VI controlled substance. The initial issue before this Court is limited to the question whether quetiapine, which is a Schedule

7

VI controlled substance, is "a controlled substance subject to abuse" within the intendment of Code § 18.2-247(B)(ii).

Powell argues that quetiapine is a controlled substance subject to abuse, and that the Court should apply the plain meaning of those words instead of relying upon statutory construction to determine the meaning of the phrase "subject to abuse."  Powell argues that the Court of Appeals should not have looked to the "phraseology" of the Drug Control Act, Code § 54.1-3400, et seq., to interpret the meaning of the "subject to abuse" clause, and instead should have used the "plain, dictionary meaning" of that phrase.

Powell relies on the Court of Appeals' decision in Rhodes v. Commonwealth, 12 Va. App. 473, 475, 404 S.E.2d 522, 523 (1991), to support his argument that the phrase "subject to abuse" should be given its plain, dictionary meaning.  Powell is correct that in Rhodes, the Court of Appeals looked to Webster's Dictionary to determine the meaning of the phrase "subject to abuse," and held that the phrase meant "ha[ving] a disposition or tendency to be misused or is liable to being misused."  Id.  However, in Rhodes, the Court of Appeals was interpreting a former version of Code § 18.2-247 that was worded differently than it is today.

8

In 1991, Code § 18.2-247(B) stated that:

> The term "imitation controlled substance"
> when used in this article means a pill,
> capsule, tablet, or substance in any form
> which is not a controlled substance, which
> is subject to abuse.

(1988 Repl. Vol.)(emphasis added). Under this section, as it existed in 1991, in order to prove that a defendant had distributed an imitation controlled substance, the Commonwealth first had to prove that the substance distributed was not a controlled substance, and second, that the substance was itself subject to abuse. Rhodes, 12 Va. App. at 474-75, 404 S.E.2d at 523. Because the substance involved in Rhodes could not, by statute, be a controlled substance, there was no reason for the Court of Appeals to refer to the Drug Control Act for any further assistance in defining the phrase "subject to abuse." The phrase "subject to abuse" did not refer to a controlled substance; rather, it referred to an imitation substance which was not a controlled substance, and therefore the Court of Appeals properly applied the plain meaning of the phrase instead of looking to the Drug Control Act.

The General Assembly, however, amended Code § 18.2-247 in 1992. Code § 18.2-247(B), as amended in 1992, stated:

> The term "imitation controlled substance"
> when used in this article means a pill,
> capsule, tablet, or substance in any form
> whatsoever which is not a controlled
> substance subject to abuse.

9

(Cum. Supp. 1992)(emphasis added).  See also 1992 Acts ch. 756.

Not long after this amendment was made, the Court of Appeals

had another opportunity to interpret Code § 18.2-247(B) in

Werres v. Commonwealth, 19 Va. App. 744, 454 S.E.2d 36 (1995).

In Werres, the Court of Appeals correctly pointed out:

> The 1992 Amendment to Code § 18.2-247(B)
> removed the comma and the words "which is"
> preceding the words "subject to abuse."
> This amendment effectively deleted the
> entire subordinate clause.  By deleting the
> comma and the subordinate clause, the
> legislature significantly changed not only
> the sentence's structure, but also its
> meaning.  The legislature thereby
> substantively changed the definition of the
> statutory offense.

Id. at 747, 454 S.E.2d at 38.  The Court of Appeals held that

under the revised definition of an imitation controlled

substance, the Commonwealth was now required to prove that the

substance was "not a controlled substance subject to abuse."

Id. at 748, 454 S.E.2d at 38.

This portion of Code § 18.2-247(B) has remained unchanged

since 1992.  Under Code § 18.2-247(B) as it currently exists,

the phrase "subject to abuse" refers to a controlled substance.

Therefore, we must determine whether the substance at issue,

quetiapine, is a "controlled substance subject to abuse."  Code

§ 18.2-247(A) states explicitly that "[w]herever the terms

'controlled substances' and 'Schedules I, II, III, IV, V and

10

VI' are used in Title 18.2, such terms refer to those terms as they are used or defined in the Drug Control Act (§ 54.1-3400 et seq.)."  Accordingly, we are required to look to the Drug Control Act in order to determine the meaning of a "controlled substance subject to abuse."

The Board of Pharmacy is charged with administering Article 5 of the Drug Control Act and adding or removing substances from the various schedules.  Code § 54.1-3443(A). Code § 54.1-3443(A) lists the various factors that should be considered when determining on which schedule to place a particular substance.  One of those factors is "the actual or relative potential for abuse."  Code § 54.1-3443(A)(1).  Any substance which the Board determines has a potential for abuse is required to be controlled.  Code § 54.1-3443(B).  Schedules I-V controlled substances all include a potential for abuse, with Schedule I substances having the highest potential for abuse, and Schedule V substances the lowest.  See Code §§ 54.1-3445 through 54.1-3454.  There is no mention, however, of the potential for abuse in factors for inclusion in Schedule VI. See Code § 54.1-3455(1)-(3)(defining the covered classes of drugs or devices to be controlled by Schedule VI by reference to stimulant or depressant content, toxicity, safety, need for supervision by a licensed practitioner, and labeling requirements).

By excluding the factor of "potential for abuse" in Schedule VI, but including it in Schedules I-V, the General Assembly has indicated to the Board that any substance with a potential for abuse should be included on Schedule I-V, and not on Schedule VI. Any controlled substances the Board lists on Schedule VI are therefore not characterized by a potential for abuse. Rightly or wrongly, after considering the numerous factors set out in Article 5 for placement on the various Schedules, the Board determined that quetiapine did not have a potential for abuse and listed it on Schedule VI instead of any of the other Schedules that included a potential for abuse. Powell distributed the quetiapine, which is a controlled substance, to Bailey. However, because it is a Schedule VI controlled substance it is not a controlled substance subject to abuse as defined by the Drug Control Act. Accordingly, the Commonwealth met its burden of proving that the substance Powell distributed was "a pill, capsule, tablet, or substance in any form whatsoever which is not a controlled substance subject to abuse." Code § 18.2-247(B)(ii).

### C. Code § 18.2-247(B)(1)

Powell's second assignment of error challenges the sufficiency of the evidence to establish that the substance was in a form such that it would be mistaken for cocaine. Code § 18.2-247(B)(1). Powell argues that the half-tablet of

12

quetiapine was not so similar in appearance that it would be mistaken for cocaine. However, the Commonwealth's evidence proved that the substance was a hard, white substance and was packaged in a knotted plastic baggie.

Detective Bailey testified that crack cocaine is "a hard form of powder cocaine." He was shown the substance that Powell sold him in court, in the same packaging he received from Powell, and was asked what it looked like to his "naked eye." Bailey responded, "[c]rack cocaine." This evidence, which we view in the light most favorable to the Commonwealth on appeal, was sufficient to permit the trier of fact to find beyond a reasonable doubt that the Commonwealth established that the substance, by appearance and packaging, would likely be mistaken for crack cocaine.

## D. Code § 18.2-247(B)(2)

In his third assignment of error, Powell argues that the evidence was insufficient to establish that he made any express or implied representations that the substance was cocaine. He argues there was no evidence he made any express representations that the substance was cocaine. He also argues there was no evidence of any such implied representation either, as the Commonwealth did not prove that Powell understood what Bailey wanted when he asked for a "four."

13

The Commonwealth's evidence proved that Bailey was driving through an "open air drug market" when Powell waved him down. Bailey asked if he was "straight," which is common slang in the drug trade to ask whether a person has any "product" for sale. Powell responded that he had what Bailey needed. Bailey told Powell that needed a "four." Detective Bailey testified that a "four" is a common term used in the drug trade to mean 40 dollars worth of cocaine. At that point, Powell did not ask what a "four" was or indicate in any way that he did not understand what Bailey was requesting. Instead, he agreed to deal with Bailey, and went inside his house to retrieve the substance. Minutes later, Powell came back to the car and dropped a white, rock-like substance into Bailey's hand in exchange for 40 dollars. This evidence, viewed in the light most favorable to the Commonwealth, demonstrates that Powell implied that the substance he was selling Bailey was 40 dollars worth of cocaine.

## III. Conclusion

We will affirm the judgment of the Court of Appeals holding that the evidence was sufficient to establish that Powell distributed an imitation controlled substance in violation of Code § 18.2-248(A).

<u>Affirmed.</u>

JUSTICE MILLETTE, with whom JUSTICE GOODWYN and SENIOR JUSTICE LACY join, dissenting.

I respectfully dissent.  The majority opinion errs in holding that Schedule VI includes only substances that <u>are not</u> subject to abuse on the basis that Schedule VI does not contain the explicit "potential for abuse" requirement found in Schedules I through V.  This analysis ignores the requirements of Schedule VI on their own and within the greater statutory context, which shows that substances that <u>are</u> subject to abuse may, and sometimes must, be categorized under Schedule VI.

Schedule VI includes:

Every drug, not included in Schedules [I through V], which because of its toxicity or other potentiality for harmful effect, or <u>the method of its use</u>, or the collateral measures necessary to its use, is <u>not generally recognized among experts . . . as safe</u> for use except by or under the supervision of a practitioner."

Code § 54.1-3455(2) (emphasis added).  An unsafe method of using a drug includes "actual or relative potential for abuse." Code § 54.1-3443(A)(1).  The Board of Pharmacy may thus categorize under Schedule VI a substance that is subject to abuse, even if such potential abuse does not rise to the level as set forth in Schedules I through V.  Code § 54.1-3455(2).

Also, some substances with a potential for abuse must be categorized under Schedule VI.  The majority opinion overlooks

15

that Schedules I through V contain requirements in addition to a "potential for abuse" that must be independently satisfied in order to be categorized under those Schedules. See Virginia Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 385, 757 S.E.2d 1, 8 (2014) (courts avoid reading statutory language as surplusage). In particular, Schedule I requires a substance to have "no accepted medical use in treatment in the United States or lack[] accepted safety for use in treatment under medical supervision." Code § 54.1-3445(2). Schedules II through V require a substance to have a "currently accepted medical use in treatment in the United States." Code §§ 54.1-3447(2); 54.1-3449(2); 54.1-3451(2); 54.1-3453(2). And Schedules II through V all require that the substance, when abused, lead to some degree of physical or psychological dependence. Code §§ 54.1-3447(3); 54.1-3449(3); 54.1-3451(3); 54.1-3453(3).

A substance can have a potential for abuse but fail to possess one of these additional requirements for categorization under Schedules I through V. Yet the Board of Pharmacy must still include such a substance in one of the Schedules because of its potential for abuse. Code § 54.1-3443(B). Such a substance can only be categorized under Schedule VI. Code § 54.1-3455(2).

Thus, Schedule VI encompasses both substances that are and are not subject to the abuse. The only evidence the

16

Commonwealth introduced at trial to prove that Quetiapine is "not a controlled substance subject to abuse" is that Quetiapine is a Schedule VI controlled substance.  Because this evidence is insufficient as a matter of law to prove that Quetiapine is not subject to abuse, the evidence was insufficient to sustain Powell's conviction of distributing an imitation controlled substance.  Code §§ 18.2-247(B)(ii); 18.2-248.  I would therefore reverse the judgment of the Court of Appeals and vacate Powell's conviction.