COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Humphreys and Alston
Argued at Lexington, Virginia


CHRISTIAN LUKE RIDDLE

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1953-15-3                   JUDGE ROBERT J. HUMPHREYS
                                                         NOVEMBER 15, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

        Joseph A. Sanzone (Sanzone and Baker, L.L.P., on brief), for
        appellant.

        Victoria Johnson, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        Christian Luke Riddle ("Riddle") appeals the November 5, 2015 decision of the Circuit

Court for Campbell County (the "circuit court") convicting him of one count of possession with

intent to distribute an imitation Schedule I/II controlled substance, in violation of Code

§ 18.2-248.  Riddle's single assignment of error is that the circuit court erred by finding that

there was sufficient evidence to convict Riddle when there were no representations regarding the

nature of the substance, no evidence that Riddle possessed the substance, and Riddle's

statements to law enforcement officers about his intent were conditional and hypothetical.

        "When considering a challenge to the sufficiency of the evidence, we must affirm the

decision below unless the trial court's decision was plainly wrong or lacked evidence to support

it."  Goodwin v. Commonwealth, 64 Va. App. 322, 330, 767 S.E.2d 741, 745 (2015).  "In

examining a challenge to the sufficiency of the evidence, appellate courts will review the

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence in the light most favorable to the party prevailing at trial and consider any reasonable inferences from the proven facts." Powell v. Commonwealth, 62 Va. App. 579, 583, 750 S.E.2d 229, 230 (2013) (quoting Towler v. Commonwealth, 59 Va. App. 284, 290, 718 S.E.2d 463, 466 (2011)).

"Circumstantial evidence . . . is offered to prove a fact not directly in issue, from which a fact in issue may reasonably be inferred." Commonwealth v. Hudson, 265 Va. 505, 512, 578 S.E.2d 781, 785 (2003). "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Id. The Supreme Court of Virginia has expressly stated that "[c]ircumstantial evidence, if convincing, is entitled to the same weight as direct testimony." Gov't Emp's. Ins. Co. v. United Servs. Auto. Ass'n, 281 Va. 647, 656, 708 S.E.2d 877, 882-83 (2011) (quoting Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008)). Moreover, "[c]ircumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Hudson, 265 Va. at 514, 578 S.E.2d at 785. Thus, "[t]he finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination." Id. at 512-13, 578 S.E.2d at 785.

First, Riddle argues that the Commonwealth failed to prove that he represented the substance in question, Himalayan salts, to be MDMA (otherwise known as "molly").[1] Pursuant to Code § 18.2-248, it is a felony to possess with the intent to distribute an "imitation controlled substance." "Imitation controlled substance" is a defined term in Code § 18.2-247(B):

---

[1] MDMA is the short form of Methylenedioxymethamphetamine. Pursuant to Code § 54.1–3446(3), MDMA is a Schedule I controlled substance.

(i) a counterfeit controlled substance or (ii) a pill, capsule, tablet, or substance in any form whatsoever which is not a controlled substance subject to abuse, and:

1. Which by overall dosage unit appearance, including color, shape, size, marking and packaging or by representations made, would cause the likelihood that such a pill, capsule, tablet, or substance in any other form whatsoever will be mistaken for a controlled substance unless such substance was introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate; or

2. Which by express or implied representations purports to act like a controlled substance as a stimulant or depressant of the central nervous system and which is not commonly used or recognized for use in that particular formulation for any purpose other than for such stimulant or depressant effect, unless marketed, promoted, or sold as permitted by the United States Food and Drug Administration.

Viewing the evidence in the light most favorable to the Commonwealth, Riddle was apprehended subsequent to a search of the vehicle he had been operating. After Officer E.G. Ramirez ("Officer Ramirez") of the Lynchburg Police Department ("LPD") discovered marijuana in the glove compartment, Riddle and Jefferson, his compatriot in the vehicle, were searched. "Three small individually wrapped baggies containing a crystal-like substance" were found on Jefferson by Officer J.M. Pavia ("Officer Pavia") of the LPD. At trial, Officer Pavia testified that based on his training and experience he thought the substance was "a new drug going around called 'molly.'" Riddle admitted that he and Jefferson bought the Himalayan salts together and packaged it. Additionally, he admitted to Officer Pavia that it was "funny" how similar the Himalayan salts looked like molly. Therefore, we hold that the evidence was sufficient to permit the trier of fact to find beyond a reasonable doubt that the Commonwealth established that the substance, by appearance and packaging, would likely be mistaken for MDMA, otherwise known as molly. See Powell v. Commonwealth, 289 Va. 20, 30, 766 S.E.2d 736, 741 (2015) (holding the evidence was sufficient for the factfinder to find that the substance

- 3 -

would likely be mistaken for crack cocaine based on the detective's testimony that the substance looked like crack cocaine to the "naked eye").

Next in challenging the sufficiency of the evidence, Riddle argues that his statement that "he was not showboating [the salts] around, but if someone else knew where to get it I would have sold it to them," was purely a hypothetical response and cannot form the basis for a finding of guilty. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Wood v. Commonwealth, 57 Va. App. 286, 307, 701 S.E.2d 810, 820 (2010) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). The factfinder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." Bazemore v. Commonwealth, 42 Va. App. 203, 213, 590 S.E.2d 602, 607 (2004). Whether his statements to Officer Pavia were "hypothetical" or not was purely an issue of fact to be resolved by the factfinder. Moreover, in doing so, the circuit court was entitled to consider the fact that the Himalayan salts were packaged into individual baggies to look like "molly." We hold that the circuit court, acting as the factfinder, was entitled to credit Riddle's statement to law enforcement officers that he did, in fact, plan to sell the repackaged Himalayan salts as molly.

In his final challenge to the sufficiency of the evidence, Riddle argues that he did not possess the Himalayan salts with the contemporaneous intent to distribute. In order to obtain a conviction for possession of a controlled substance with the intent to distribute, "the Commonwealth must prove that the defendant possessed the controlled substance contemporaneously with his intention to distribute that substance." Stanley v. Commonwealth, 12 Va. App. 867, 869, 407 S.E.2d 13, 15 (1991) (*en banc*). "Possession . . . need not be exclusive, but may instead be joint." Merritt v. Commonwealth, 57 Va. App. 542, 556, 704

S.E.2d 158, 165 (2011) (*en banc*) (quoting Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983)).

Here, Riddle and Jefferson, acting together, purchased the Himalayan salts because of its similar appearance to MDMA. Then, the two packaged it to look like molly. Moreover, viewing the evidence in the light most favorable to the Commonwealth, Riddle admitted that he would have sold the Himalayan salts as "molly" if asked. Thus, even though the Himalayan salts were found on Jefferson, we hold that Riddle consented to the felonious purpose of possessing with the intent to distribute the imitation controlled substance because Riddle and Jefferson, together, procured and packaged the Himalayan salts to look like molly. Therefore, they were equal principals in the commission of the offense of possession of an imitation controlled substance with the intent to distribute it.

Thus, for the foregoing reasons, we affirm the judgment of the circuit court convicting Riddle of one count of possession with intent to distribute an imitation Schedule I/II controlled substance, in violation of Code § 18.2-248.

Affirmed.