COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, Athey and Friedman
Argued by videoconference


BARBARA NICOLE WOOD

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1391-20-3              JUDGE CLIFFORD L. ATHEY, JR.
                                                          MARCH 1, 2022

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                            Paul A. Dryer, Judge[1]

          Stephen B. Geiger, Assistant Public Defender, for appellant.

          Ken J. Baldassari, Assistant Attorney General (Mark R. Herring,[2]
          Attorney General, on brief), for appellee.


        Barbara Nicole Wood ("Wood") appeals her convictions for possession of a Schedule I or

II controlled substance in violation of Code § 18.2-250 and for leaving the scene of an accident

involving damage to unattended property in violation of Code § 46.2-896.  She argues that there

was insufficient evidence to convict her either of possession of a controlled substance or of

leaving the scene of an accident.  Since the evidence presented to the trial court was sufficient to

support both convictions, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge William Chapman Goodwin presided over the trial and signed the order of conviction.  Judge Paul A. Dryer signed the final sentencing order.

[2] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

## I. Background

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

On the afternoon of April 5, 2019, both Staunton Police Officer Ryan Brady ("Officer Brady") and Staunton Police Lieutenant Mike Berbes ("Lieutenant Berbes") were dispatched to an apartment complex on Springhill Road in the City of Staunton to investigate a report of disorderly conduct. Upon arrival, Officer Brady and Lieutenant Berbes encountered Wood outside one of the apartment buildings. They noticed an "actively bleeding," "fresh," "oozing" cut on her forehead and asked if she was injured. Wood said she had been in an automobile accident earlier that day in Albemarle County but did not need medical attention. When the officers first encountered Wood, she was standing about one-hundred feet from a damaged white 2011 Chevrolet pickup truck located in the parking lot of the apartment building.

Lieutenant Berbes subsequently received a phone call from dispatch informing him that Wood may have been in an automobile accident "just up the street" involving a truck which allegedly struck a utility pole. Lieutenant Berbes left Officer Brady and drove between a quarter and a half of a mile up Springhill Road before locating a recently damaged utility pole. Lieutenant Berbes found multiple truck parts, broken glass, and other debris on the ground near the damaged utility pole. No vehicles were in the vicinity of the damaged pole, and no note had been left behind regarding the damage to the pole or how it occurred.

Upon Lieutenant Berbes's return to the apartment complex, Officer Brady and Lieutenant Berbes discovered that the right, rear, passenger side taillight of the white 2011 Chevrolet pickup truck was broken, as was the rear window. Upon further investigation, it appeared to them that the truck had "fishtailed" and the rear end had collided with something, causing the damage to

the rear of the truck. The vehicle parts previously found on the ground near the damaged utility pole, which specifically included a taillight lens, matched the damage to the truck almost perfectly. They also identified a temporary license tag located on the rear of the truck, which was valid for thirty days and had been issued to Wood.

When the police later searched the passenger compartment of the truck, they found Wood's driver's license inside a large purse. Additionally, in an unlocked glovebox, they found a temporary certificate of registration for a 2011 Chevrolet pickup truck with Wood listed as the registered owner. The certificate of registration indicated that, only two days before on April 3, 2019, the vehicle had been purchased by Wood. They also found two glass smoking devices in the glovebox located directly beneath the temporary certificate of registration. Both pipes contained a white powdery substance which forensic analysis later revealed was methamphetamine residue.

At trial, Wood claimed the damaged white pickup truck found in the parking lot was not the 2011 Chevrolet pickup truck she owned but was instead a 2005 white Chevrolet pickup truck she did not own. She further claimed that she had loaned the temporary license tag found by law enforcement to Paul Jenkins ("Jenkins"), who placed the tag on the rear of the 2005 Chevrolet truck, resulting in the misidentification. Wood also testified that she rode in the misidentified 2005 Chevrolet truck on the day of the incident but was not in the truck when it struck the utility pole. She speculated that either Jenkins or a person named "Julio" was driving the 2005 Chevrolet truck when it hit the pole. Wood further testified that Jenkins and Julio had dropped her off at the Springhill Road apartments so she could look at a Jeep that was for sale, but when they returned in the 2005 Chevrolet truck later, it had been damaged. She also claimed she had accidentally left her purse in the misidentified truck because she was in a hurry to inspect the Jeep. In addition, Wood testified that she had never seen any drugs or drug paraphernalia when

- 3 -

she was a passenger in the 2005 Chevrolet truck. Finally, Wood denied that she had a conversation with Officer Brady and Lieutenant Berbes, that she was involved in an accident in Albemarle County that day, or that there had been any blood on her face.

## II. ANALYSIS

### A. *Possession of a Schedule I or II Controlled Substance (Methamphetamine)*

Wood claims that no reasonable factfinder could determine that she constructively possessed the drugs in the 2011 white Chevrolet pickup truck. She also maintains that *Burchette v. Commonwealth*, 15 Va. App. 432 (1992), requires this Court to reverse her conviction.

"It is well settled that '[w]hen a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court.'" *McArthur v. Commonwealth*, 72 Va. App. 352, 367 (2020) (quoting *Rowland v. Commonwealth*, 281 Va. 396, 399 (2011)). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." *Id.* (citing *Cordon v. Commonwealth*, 280 Va. 691, 694 (2010)). Any "[p]otential inconsistencies in testimony are resolved by the fact finder." *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). Such conflicts are not revisited on appeal "unless 'the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'" *Id.* (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369 (2006)).

"Establishing constructive possession requires proof 'that the defendant was aware of both the presence and character of the [item] and that it was subject to [her] dominion and control.'" *Watts v. Commonwealth*, 57 Va. App. 217, 232-33 (2010) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984)). "Constructive possession of drugs can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show

that the accused was aware of both the presence and character of the substance and that it was subject to h[er] dominion and control.'" *Armstead v. Commonwealth*, 56 Va. App. 569, 580 (2010) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 6 (2004)).

Here, the trial court rejected Wood's testimony as inherently incredible. A rejected claim of innocence "must be interpreted . . . as a mere fabrication to conceal [appellant's] guilt." *Ervin v. Commonwealth*, 57 Va. App. 495, 515 (2011) (quoting *Staton v. Commonwealth*, 36 Va. App. 282, 289 (2001)). "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs and paraphernalia in the [car]." *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (*en banc*). "Ultimately, 'the issue [of what constitutes constructive possession] is largely a factual one' left to the trier of fact, not the appellate court." *Bagley v. Commonwealth*, 73 Va. App. 1, 28 (2021) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)) (alteration in original).

In *Burchette*, the primary evidence tying the defendant to the vehicle containing the contraband was that the vehicle was parked in his driveway with his wallet inside. This "evidence failed to show either *when* [the defendant] may have used or occupied the vehicle or when or for *how long* the drugs or paraphernalia had been in it." *Burchette*, 15 Va. App. at 435-36 (emphasis added).

Here, the police encountered Wood outside the apartment building near the wrecked truck. She had a wound on her forehead that was bleeding and appeared to be fresh. Near the damaged utility pole, the officers found vehicle debris that matched the damage to the truck.

Wood's purse and driver's license were inside the wrecked truck. The truck bore a temporary license tag that corresponded with the temporary certificate of registration bearing Wood's name, which was inside the glovebox on top of glass smoking devices containing methamphetamine residue. The registration indicated that Wood had purchased the truck just two days before the incident. Based on the totality of this evidence, it was not unreasonable for the trier of fact to conclude that Wood occupied the damaged truck while the drugs were in the vehicle and was aware of the drugs inside the glovebox under her recently obtained registration. Consequently, there is sufficient evidence to support the trier of fact's determination that Wood constructively possessed the methamphetamine in the glass smoking pipes found in the glovebox, and we will not disturb that finding on appeal.

### B. *Leaving the Scene of an Accident (Code § 46.2-896)*

Wood also argues that no reasonable factfinder could determine that she crashed the truck into the telephone pole without notifying anyone. She contends the Commonwealth could only "speculate" as to whether she was the one driving the truck at the time of the wreck.

However, "[m]erely because [appellant's] theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with [her] innocence has not been excluded. What weight should be given evidence is a matter for the factfinder to decide." *Haskins*, 44 Va. App. at 9 (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)).

Code § 46.2-896 requires the driver of any vehicle involved in an accident that damages unattended property to make a reasonable effort to find the owner and report the accident. If the owner of the property cannot be found, the driver must leave a note or other sufficient information and identification in a conspicuous place at the scene of the accident and report the accident in writing within twenty-four hours to the Virginia State Police or the local law-enforcement agency.

- 6 -

As previously noted, at the scene of the damaged utility pole, the police found vehicle parts that matched the damage to the white 2011 Chevrolet pickup truck that Wood purchased two days before the accident. In addition, the truck contained her driver's license, purse, and registration. When law enforcement arrived at the Springhill Road apartments, they encountered Wood with her forehead appearing recently cut and bleeding. The police found the damaged utility pole a short distance away from where they encountered Wood who was in the parking lot near the wrecked truck. There were no vehicles near the damaged utility pole at the crash scene, nor was there a note containing any identifying information concerning the driver involved in the accident. Moreover, the trier of fact found Wood's testimony, including her denial that she had ever spoken to law enforcement, inherently incredible. Thus, considering the evidence in its entirety, a factfinder could reasonably conclude beyond a reasonable doubt that Wood was driving the truck when it struck the pole, did not notify the owner of the damaged property or the police about the incident, and was therefore guilty of violating Code § 46.2-896.

## III. CONCLUSION

Since the evidence was sufficient for the trial court to reasonably conclude that Wood both constructively possessed a Schedule I or II controlled substance (methamphetamine) and left the scene of an accident without notifying the owner of the damage to his or her property, we affirm.

*Affirmed.*