COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Frank and Humphreys
Argued at Salem, Virginia

JAMIE LEE TOWLER

v.      Record No. 0990-10-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT P. FRANK
DECEMBER 20, 2011

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Thomas L. Phillips, Jr. (Phillips, Morrison, Johnson & Ferrell, on brief), for appellant.

Rosemary V. Bourne, Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


Jamie Lee Towler, appellant, was convicted of robbery, in violation of Code § 18.2-58, attempted robbery, in violation of Code §§ 18.2-26 and 18.2-58, statutory burglary,[1] in violation of Code § 18.2-91, two counts of use of a firearm in the commission of robbery and burglary, in violation of Code § 18.2-53.1, and unlawfully wearing a mask, in violation of Code § 18.2-422.[2] On appeal, he challenges the sufficiency of the evidence. For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

On December 1, 2008, shortly before 9:00 p.m., a Caucasian man, with his face partially concealed but with his eyes exposed, approached J.H., a technician at the pharmacy counter of a CVS in Altavista, Virginia. He passed J.H. a note demanding money and threatening to kill her.

_____

[1] Appellant does not challenge that a burglary occurred.

[2] The mask offense is not subject to this appeal.

J.H. testified at trial that the man pushed up his shirt and showed her a gun. J.H. observed the handle and trigger of the weapon. J.H. testified she was terrified.[3] She went to the cash register, opened the register, and put the money into a bag. J.H. gave appellant the money because he had a gun. Appellant never pointed the gun at J.H.

The man then screamed and demanded "all the money and the Oxycontin" from the pharmacist. The pharmacist also testified he was in fear of appellant. After the pharmacist told him that he could not access the safe where the Oxycontin was kept, the man demanded that the pharmacist give him prescriptions for Oxycontin that had already been filled for other customers. At no time did appellant make any effort to come across the counter, nor did he make any gestures toward the pharmacist. After the pharmacist explained that it would take a long time to examine all of the filled prescriptions, J.H. handed the man approximately $230 from the cash registers at the pharmacy counter. The man told J.H., "I see you looking at me, yeah, I got brown eyes."[4] Appellant never received any drugs.

J.M., the sales manager at CVS, was exiting the stockroom when he saw a Caucasian man at the pharmacy counter wearing a hoodie, a mask, and "urban camouflage pants." The man told J.M., in a threatening tone, to get on the floor. J.M. said he was in a "stress-panic mode," sweating with his pulse racing. The man pointed something black at him, which he believed to be either a gun or a black glove. After a closer look, J.M. indicated the item looked more like a 9 millimeter gun. Afterwards, J.M. heard the man demand Oxycontin and money from the employees at the pharmacy counter. J.M. felt "pretty confident," based on the man's mannerisms, gait, build, and voice, that the man was appellant. J.M. was familiar with appellant because appellant was a regular CVS customer.

---

[3] K.R., a fellow employee at CVS, testified J.H. looked scared and "really shaky" as appellant followed J.H. to the register.

[4] Appellant has brown eyes.

On the night of the robbery, Captain Ken Walsh, of the Altavista Police Department, contacted several informants, inquiring if they had heard about the incident at the CVS. One of those informants, B.P., called Walsh that night. She said that appellant had told her he had over $200[5] he received from a guy at CVS. Appellant told B.P. he was going to buy some Lortab or Oxycontin with the money and sell it to B.P.

On December 2, 2008, the police set up a controlled buy between B.P. and appellant. B.P. gave appellant money in exchange for several pills. Walsh testified that when B.P. returned from the exchange, she appeared very scared and was shaking. She told Walsh that appellant had approached her from behind and was carrying a dark-colored semi-automatic pistol in his hand.

The same day, police went to appellant's house and told him that they wanted to speak with him about an incident at CVS. Appellant stated he had no guns or pills at the house and "did not do no armed robbery," even though the police never mentioned a gun was used in the robbery. Appellant, upon arrest, told Walsh he used to have a problem with Oxycontin and Lortab, but no longer did.

At trial, B.P. testified she contacted appellant about purchasing some Lortab or Oxycontin. Appellant told her that he had borrowed some money from a guy at CVS and would try to get some pills for her. B.P. testified that appellant later told her he had "fucked up" and robbed CVS. Appellant told B.P. he got money,[6] but no drugs. He told B.P. he went into CVS to rob it for Oxycontin.

When B.P. met appellant for the drug purchase, appellant was carrying what appeared to B.P. to be a black 9 mm gun, "like the ones the police carry."

---

[5] Walsh never told B.P. the amount of money taken from CVS, nor that appellant was a suspect.

[6] B.P. could not remember if appellant said $230 or $260.

In denying appellant's motion to reconsider the guilty verdict, the trial court found appellant's testimony not credible, but found B.P. to be credible.

This appeal follows.

ANALYSIS

Appellant raises five assignments of error, all dealing with sufficiency of the evidence. In examining a challenge to the sufficiency of the evidence, appellate courts will review the evidence in the light most favorable to the party prevailing at trial and consider any reasonable inferences from the proven facts. Zimmerman v. Commonwealth, 266 Va. 384, 386, 585 S.E.2d 538, 539 (2003). The judgment of the trial court is presumed to be correct and will be reversed only if it is "plainly wrong or without evidence to support it." Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005).

Appellant first contends the evidence is insufficient to prove use of a firearm in the commission of burglary because the uncontroverted evidence proves he did not display a firearm until after the burglary was completed. We do not address this issue because it was not an assignment of error included in his petition for appeal. Appellant concedes he first raised this assignment of error in his demand for consideration by a three-judge panel of this Court. The order from the panel granting the appeal stated only: "A judge of this Court having determined that this petition should be granted, an appeal is hereby awarded to the petitioner from a judgment of the Circuit Court of Campbell County dated June 29, 2010." "Only assignments of error assigned in the petition for appeal will be noticed by this Court." Rule 5A:12(c)(1)(i).[7] We therefore decline to consider this argument.

Next, appellant challenges the sufficiency of the evidence that identified him as the perpetrator of the CVS incident. Specifically, he argues B.P.'s testimony is inherently

---

[7] "[U]nlike Rule 5A:18, Rule 5A:12 contains no 'good cause' or 'ends of justice' exception." Thompson v. Commonwealth, 27 Va. App. 620, 626, 500 S.E.2d 823, 826 (1998).

- 4 -

incredible. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). When "credibility issues have been resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991).

> When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts[,] which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989).

We should first note the trial court, as fact finder, found B.P.'s testimony credible and discounted appellant's testimony as not worthy of belief.

Appellant premises his argument as to B.P.'s credibility on the timing of the detective's telephone calls to her and her responding to the detective. Assuming there are inconsistencies in the sequence of these phone calls, there is other evidence that supports B.P.'s testimony and appellant's involvement in the robbery. Despite not being advised how much money was taken from CVS nor that appellant was a suspect, B.P. told the detective appellant had received over $200 from a man at CVS.

J.M. identified appellant as the perpetrator by his voice, mannerisms, gait, and build. Without the police telling appellant a gun was used in the robbery, appellant denied being involved in an "armed robbery." The perpetrator specifically demanded Oxycontin. Appellant admitted he had formerly had a problem with Oxycontin. The gun described by J.M. was similar

in description to the one appellant had when he sold the pills to B.P. B.P.'s testimony that appellant said he got money but no drugs was corroborated by the CVS employees.

B.P.'s testimony was corroborated by other evidence. Potential inconsistencies in testimony are resolved by the fact finder. We do not revisit such conflicts on appeal "unless 'the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'" Molina v. Commonwealth, 47 Va. App. 338, 369, 624 S.E.2d 83, 98 (quoting City of Bedford v. Zimmerman, 262 Va. 81, 86, 547 S.E.2d 211, 214 (2001)), aff'd, 272 Va. 666, 636 S.E.2d 470 (2006). We conclude the trial court did not err in finding appellant was the perpetrator.

Appellant next assigns error to his conviction for use of a firearm in the commission of burglary under Code § 18.2-91 (statutory burglary) because he contends the burglary described in Code § 18.2-53.1 is limited to common law burglary.

We have addressed this precise issue in Rashad v. Commonwealth, 50 Va. App. 528, 651 S.E.2d 407 (2007), and "conclude[d] that the use of a firearm in the commission of *any* burglary violates Code § 18.2-53.1." Id. at 541, 651 S.E.2d at 414 (emphasis added). Appellant acknowledges that our holding in Rashad rejected his very argument, but asks that we now revisit that decision.

We will not, nor are we able to, revisit Rashad.

> We are not at liberty to ignore the decision of a previous panel. Commonwealth v. Burns, 240 Va. 171, 173-74, 395 S.E.2d 456, 457 (1990). See In re Baskins, 16 Va. App. 241, 245, 430 S.E.2d 555, 558 (1993), judgment reversed by, 247 Va. 506, 442 S.E.2d 636 (1994) ("We are bound by the decision of a prior panel of this Court."); Robinson v. Commonwealth, 13 Va. App. 540, 543, 413 S.E.2d 661, 662 (1992) ("Under the rule of *stare decisis*, a decision by a panel of this court is an established precedent.").

Collins v. Commonwealth, 30 Va. App. 443, 449, 517 S.E.2d 277, 280 (1999). Under this interpanel accord doctrine, we lack the authority to revisit Rashad. That decision, from a panel

of this Court, "cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003) (citing Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996)).

Therefore, we find no error with the trial court finding appellant guilty of use of a firearm in the commission of burglary.

Next, appellant contends the trial court erred in convicting him of use of a firearm in the commission of robbery or burglary, because no evidence showed he used or displayed the weapon in a threatening manner. Specifically, appellant maintains that he did not touch the firearm, nor did he point it at the victim.[8]

Code § 18.2-53.1 states in part:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder, rape, forcible sodomy, inanimate or animate object sexual penetration as defined in § 18.2-67.2, robbery, carjacking, burglary, malicious wounding as defined in § 18.2-51, malicious bodily injury to a law-enforcement officer as defined in § 18.2-51.1, aggravated malicious wounding as defined in § 18.2-51.2, malicious wounding by mob as defined in § 18.2-41 or abduction.

"'The purpose of Code § 18.2-53.1 is to deter violent criminal conduct.'" Dezfuli v. Commonwealth, 58 Va. App. 1, 9, 707 S.E.2d 1, 5 (2011) (quoting Rose v. Commonwealth, 53 Va. App. 505, 512, 673 S.E.2d 489, 492 (2009)). "The statute is aimed at preventing actual physical injury and also to discourage criminal conduct that produces fear of physical harm." Id. Notably, "'Code § 18.2-53.1 is written in the disjunctive, prohibiting either the actual use of a firearm, *or* the display of a firearm in a threatening manner.'" Id. (quoting Rose, 53 Va. App. at 513-14, 673 S.E.2d at 493 (emphasis in original)). "[In] cases involving the threatening display

_____

[8] Appellant's argument is limited to whether the weapon was displayed in a threatening manner. His argument addresses only those facts pertaining to the robbery, not the burglary.

of a firearm under Code § 18.2-53.1, the defendant must display his firearm to "promise punishment, reprisal or other distress" to the victim. Id. at 10, 707 S.E.2d at 5.

In this case, appellant clearly displayed the weapon in a threatening manner. Appellant handed J.H. a note demanding money and threatened to kill J.H. if she did not comply. After handing the note to J.H., appellant lifted his shirt, revealing a weapon.[9] A fair inference from that series of events is that appellant had the ability to carry out his threat to kill. It is difficult to imagine a more threatening display of a firearm. Indeed, J.H. testified she was "terrified" and gave the money to appellant because he had a gun. J.M. testified appellant pointed an object at him which J.M. believed to be a 9 millimeter gun. J.M. indicated that as a result of appellant brandishing the firearm, he was in a "stress-panic mode."

Evidence supports the trial court's finding that appellant used or displayed the firearm in a threatening manner while committing robbery and burglary.

Appellant contends the display of the firearm, in itself, must be done in a threatening manner. He attempts to separate the threat contained in the note from the display of the weapon, arguing the statute cannot be satisfied by proof that the overall situation was threatening. We reject this argument.

The Supreme Court of Virginia, in several cases, held one can be convicted under Code § 18.2-53.1 even when no weapon is displayed. In Courtney v. Commonwealth, 281 Va. 363, 706 S.E.2d 344 (2011), Courtney told the victim "I have a gun, get back in the car." He further threatened to kill her. He held some item under his shirt. The victim complied with Courtney's demands even though she never saw a gun. Under these facts, the Supreme Court of Virginia affirmed Courtney's conviction under Code § 18.2-53.1.

---

[9] Appellant does not contest that the object displayed was a firearm.

In Powell v. Commonwealth, 268 Va. 233, 602 S.E.2d 119 (2004), no firearm was displayed or seen by the victims, yet Powell informed them he had a pistol in his pocket, kept his hand in his pocket, and threatened to hurt the victims if they did not cooperate.

If appellant's argument prevailed, the convictions in Powell and Courtney would not have withstood appellate review. In those cases, because no weapon was actually displayed, appellant would argue the mention of the weapon, alone, was not threatening. However, the Supreme Court of Virginia, in affirming the convictions, looked at the totality of the circumstances, including the perpetrator's verbal threats, the manner in which the perpetrator indicated he had a weapon, and the victim's response to those threats.

Here, the evidence is even more compelling than in Courtney and Powell. J.H. actually saw a weapon when appellant pulled up his shirt. Appellant threatened to kill her. Under the totality of the circumstances, the evidence supports the trial court's finding of guilt. See Cromite v. Commonwealth, 3 Va. App. 64, 68, 348 S.E.2d 38, 40 (1986) (stating "[w]hile the evidence would have been more conclusive had [the victim] seen a firearm, we cannot disregard the totality of [the] testimony").

Finally, appellant challenges the sufficiency of the evidence establishing that appellant entered CVS with the intent to commit larceny or a felony other than murder, rape, robbery, or arson. He argues that the evidence indicates he entered CVS with the intent to commit robbery, thus removing him from the purview of Code § 18.2-91.[10]

---

[10] Code § 18.2-91 states in part:

> If any person commits any of the acts mentioned in § 18.2-90 with
> intent to commit larceny, or any felony other than murder, rape,
> robbery or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80,
> or if any person commits any of the acts mentioned in § 18.2-89 or
> § 18.2-90 with intent to commit assault and battery, he shall be
> guilty of statutory burglary.

This Court applies a *de novo* standard of review when addressing a question of statutory construction. Harris v. Commonwealth, 274 Va. 409, 413, 650 S.E.2d 89, 91 (2007).

> Statutory interpretation aims primarily to determine legislative intent. In determining that intent, words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise. We strictly construe penal statutes against the Commonwealth but will not apply an unreasonably restrictive interpretation of the statute that would subvert the legislative intent expressed therein.

Testerman v. Commonwealth, 57 Va. App. 164, 167, 699 S.E.2d 522, 524 (2010) (internal citations and quotations omitted).

The indictment charging appellant with statutory burglary stated:

> On or about December 1, 2008, Jamie Lee Towler, unlawfully and feloniously and while armed with a deadly weapon, did enter in the nighttime the premises of the Altavista CVS Store, with the intent to commit a felony, larceny or assault and battery therein, in violation of § 18.2-91 of the Code of Virginia against the peace and dignity of the Commonwealth.[11]

Thus, the indictment set forth three separate and distinct intents, i.e. a felony, larceny *or* assault and battery. The indictment complied with Code § 18.2-91. It did not allege appellant had the intent to commit robbery.

"In determining intent, the fact finder is entitled to draw inferences from proved facts, so long as the inferences are reasonable and justified." Siquina v. Commonwealth, 28 Va. App. 694, 700, 508 S.E.2d 350, 353 (1998).

Intent is a factual determination, and a trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous. Robertson v. Commonwealth, 18 Va. App. 635, 639, 445 S.E.2d 713, 715 (1994). Therefore, our inquiry is

---

[11] Appellant does not contest the adequacy of the indictment to put him on notice of the nature and character of the offense. See Commonwealth v. Dallas, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000).

whether sufficient evidence supports the fact finder's conclusion that appellant entered the CVS with the intent to commit a felony, not including robbery. The record supports this finding.

Appellant told B.P. he went to CVS to rob it for Oxycontin or Lortab. When he entered the store, he demanded money and Oxycontin. When the pharmacist responded he had no access to Oxycontin, appellant demanded Oxycontin from prescriptions already filled for other customers. Code § 54.1-3448 lists Oxycontin as a Schedule II controlled drug, the possession of which is a Class 5 felony under Code § 18.2-250. Oxycodone is the generic name of Oxycontin. See Startin v. Commonwealth, 281 Va. 374, 377, 706 S.E.2d 873, 875 (2011). It is therefore reasonable to conclude that appellant entered CVS with the intent to commit multiple crimes, including felony possession of Oxycontin.

At trial, after appellant's motion to strike, the trial court concluded that the Commonwealth proved sufficient evidence that appellant entered CVS with the intent to commit larceny. We cannot say the record in this case contains evidence that appellant entered CVS with the intent to commit larceny. While the trial court found appellant entered with the intent to commit larceny, we conclude the trial court was right for the wrong reason.

In determining whether to apply the right result for the wrong reason doctrine, "the standard of review is whether the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony." Banks v. Commonwealth, 280 Va. 612, 618, 701 S.E.2d 437, 440 (2010).

We apply the right result doctrine here because the facts in the trial record establish that appellant entered CVS with the intent to commit a felony other than robbery; i.e., possession of a Schedule II controlled substance. Therefore, the trial court properly convicted appellant.

## CONCLUSION

The evidence was sufficient to sustain appellant's convictions. We find no error in the trial court's conclusions, and we will not disturb the judgment.

<u>Affirmed.</u>