UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia


LEON RUFUS ROSE

MEMORANDUM OPINION* BY
v.      Record No. 0942-21-3      JUDGE RICHARD Y. ATLEE, JR.
SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

(Ronnie H. West; West Law Firm, PLC, on brief), for appellant.
Appellant submitting on brief.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Lynchburg ("trial court") convicted

appellant Leon Rufus Rose of malicious wounding, use of a firearm during the commission of a

felony, and possession of a firearm by a convicted violent felon. Rose argues that the trial court

erred "because the evidence was insufficient to find [him] guilty where the Commonwealth's

witnesses' credibility was questioned and their stories were in conflict." For the following reasons,

we disagree and affirm the convictions.

I. BACKGROUND

"On appeal, an appellate court is required to consider the evidence and all inferences fairly

deducible from it in the light most favorable to the Commonwealth, the prevailing party at trial."

*Lambert v. Commonwealth*, 298 Va. 510, 515 (2020). Therefore, we "discard" Rose's evidence that

conflicts with that of the Commonwealth, and "regard as true all the credible evidence favorable to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth and all fair inferences to be drawn therefrom." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018) (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

On the evening in question, Kenneth Payne picked up Dwayne Kendrick so they could attend a party at Rose's house, located in Lynchburg, Virginia. Upon arrival, Payne entered the house, but Kendrick decided to stay on the front porch. Payne became "way intoxicated," and he and Rose began "fussing and arguing" inside the house. When Payne came out onto the porch, Kendrick urged him to leave, and Payne acquiesced. In the car, Payne told Kendrick that he wanted to apologize to Rose, so Kendrick drove them back to Rose's house.

Upon returning to Rose's house, Payne immediately began arguing with Rose's guests and "trying to fight people." Payne then started arguing with Rose, who told Payne to stop "disrespecting [his] house and [his] company." Kendrick grabbed Payne by his collar and dragged him to the passenger's side of Payne's car. As Kendrick started to get into the driver's seat, he heard a gunshot and saw the driver's side window shatter. Kendrick looked at the porch and saw Rose, illuminated by a porch light, shooting a silver pistol with a black handle. Kendrick got into the car, trying to start it and leave the situation, when a second shot struck him in his left leg. Kendrick looked at the porch again and saw Rose standing there shooting at them. Rose was the only person left on the porch because the other guests had "scattered," running into the house. Payne hid on the car's floor. Kendrick started the car and drove to Lynchburg General Hospital, where he was treated for the gunshot wound.

The police obtained an arrest warrant for Rose and executed a search warrant of Rose's house. Officer Wilkes, of the City of Lynchburg Police Department, investigated and found one spent and two unspent nine-millimeter cartridge casings outside the house. Wilkes found the spent casing at the bottom of the stairs leading up to the front porch. Inside the house, Wilkes found a

black nine-millimeter handgun in the living room, "wedged" between the cushion and the arm of a chair.

Wilkes examined Payne's vehicle and found a hole that went through the exterior of the driver's side door and continued through the interior of the door at a downward angle. In the vehicle, Wilkes found two unfired rounds of ammunition and a "red substance," *i.e.*, blood, on the passenger's and driver's sides floorboards.

While police officers were searching inside Rose's house, Officer Person of the City of Lynchburg Police Department monitored the perimeter. Person saw Rose walking "up the street" and arrested him. During the search incident to arrest, Person found a loaded magazine for a handgun, matching the firearm found in Rose's house, in his front left pocket and a single round in his front right pocket. The police interviewed Rose, who initially stated that he had not touched a firearm since July 2018, but later admitted that he handled a firearm on the day of the incident. A primer residue test indicated that Rose had primer residue particles, which are discharged when a weapon is fired, on his left hand.

Several defense witnesses testified that Payne also owned a gun and that he had it with him at the party. Rose's wife, Bobbi Rose, was one of these witnesses. She provided a marginally different version of what took place the evening of the party, with the most significant distinction being that she was on the porch when Payne and Kendrick left and did not hear or see any gunshots fired before she "passed out." She testified that she owned the pistol that the police discovered in her and Rose's house.

After closing arguments, the trial court determined that Rose had a motive to shoot at Payne because Payne was being "disrespectful" at his party. The trial court discussed the spent cartridge casing found at the bottom of the stairs to Rose's porch and concluded that the shell could only have been there for "a short period of time." The trial court found that Bobbi Rose's testimony that no

gunshots occurred conflicted with the spent shell casing found by the porch. The trial court reasoned that "you cannot explain away the shell casing at the bottom of the stairs if nothing happened. The only explanation is that there was a shot fired, it was fired by Mr. Rose, [and] it struck Mr. Kendrick in the leg."

The trial court also determined that the trajectory of the bullet was consistent with being fired from the top of the porch stairs, where Rose was standing. It discussed how Rose decided to take a walk "at a very strange period of time, which just so happens to match up with the fact that the shooting had just taken place." It also found the results of the primer residue test, indicating that Rose had recently fired a gun, to be "damning." It questioned why Rose had a loaded magazine, "identical to the one that was found inside the gun" in his house, in his pocket. It dismissed any evidence as to whether Payne also had a gun as a "Red Herring" because there was no evidence of self-defense. The trial court convicted Rose of all three charges and sentenced Rose to eighteen years' imprisonment with nine years suspended. This appeal followed.

## II. ANALYSIS

Rose argues that the evidence was insufficient because "the Commonwealth's witnesses' credibility was questioned and their stories were in conflict." Specifically, Rose asserts that "there was competing evidence as to whether Kendrick was shot at [Rose]'s house" because "Kendrick claimed he was shot by Rose, while Bobbi Rose claimed no gunshots went off whatsoever."

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"

*Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

    B. *The evidence was sufficient to prove Rose possessed the gun and shot Kendrick.*

Rose's argument hinges on the trial court's assessments of witnesses' credibility. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). The fact finder "may accept or reject the testimony [of a witness] in whole or in part." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000)). Any "'inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)).

Here, the trial court had the opportunity to see and hear the witnesses testify and weigh each witness's credibility. It found the Commonwealth's witnesses to be credible. It rejected Bobbi Rose's testimony that no shooting occurred because her account of the evening did not explain the existence of the spent shell casing at the bottom of the porch stairs. The trial court concluded that since the spent shell casing could only have been there for "a short period of time," the "only

explanation is that there was a shot fired, it was fired by Mr. Rose, [and] it struck Mr. Kendrick in the leg."

Additionally, the trial court discussed other evidence that conflicted with the testimony of Rose's witnesses. It determined that the trajectory of the bullet was "consistent" with Kendrick's testimony that Rose was standing at the top of the porch stairs and firing the gun. It explicitly discussed Rose's motive to shoot Payne, as he had been "disrespectful" to Rose's guests and that Rose felt he had "to do something to deal with that disrespect." The trial court also discussed how Rose "disappear[ed]" to take a walk "at a very strange period of time," which coincided with the time immediately following the shooting. It noted that after Rose's walk, the police found him with a loaded magazine in his pocket, matching the one in the gun that shot Kendrick. Finally, the trial court found it "damning" that Rose had gunshot residue on his hands after the shooting.

Considering the totality of the record, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Rose was guilty of malicious wounding, use of a firearm during the commission of a felony, and possession of a firearm by a convicted violent felon.

III. CONCLUSION

The evidence was sufficient to prove that Rose shot Kendrick, and thus the trial court did not err in convicting him for malicious wounding, use of a firearm during the commission of a felony, and possession of a firearm by a convicted violent felon. Accordingly, we affirm.

*Affirmed.*