COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and White
Argued at Salem, Virginia

UNPUBLISHED

MICHAEL BRIAN MOTLEY

v.      Record No. 0211-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
DECEMBER 29, 2022

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

(Michael A. Nicholas; Daniel, Medley & Kirby, P.C., on brief), for
appellant. Appellant submitting on brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the Circuit Court of Pittsylvania County (the "trial court") convicted

Michael Brian Motley ("appellant") on one count of rape, in violation of Code § 18.2-61, one count

of object sexual penetration, in violation of Code § 18.2-67.2, one count of aggravated sexual

battery, in violation of Code § 18.2-67.3, two counts of indecent liberties, in violation of Code

§ 18.2-370, and two counts of sodomy, in violation of Code § 18.2-67.1.[1] Appellant contends the

Commonwealth's evidence was insufficient to support the guilty verdicts because the victim's

testimony was unbelievable as a matter of law. Finding no error, this Court affirms.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The conviction and sentencing orders in CR20000480-00, in which appellant was
convicted of sodomy, erroneously reflect that appellant was convicted and sentenced for a
violation of Code § 18.2-37.1. Accordingly, this matter is remanded to the trial court for the sole
purpose of amending those orders to reflect that appellant was convicted and sentenced for a
violation of Code § 18.2-67.1.

BACKGROUND[2]

In the summer of 2020, S.M.[3] lived with her great-aunt, Debra Cobbs, but she often visited appellant, her uncle, at the home he shared with his wife, Jasmine. On one occasion, S.M. visited appellant at his home while Jasmine was at work. S.M. and appellant were sitting on the couch watching TV when appellant began to rub S.M.'s arm with his hand. He told S.M. that he would stop if she wanted him to, and S.M. said, "[I]t's fine." Appellant then began rubbing the top of S.M.'s thigh over her dress. He again said, "[I]f you want me to stop, I'll stop." S.M. did not respond that time. She later testified at appellant's trial that she did not stop appellant because she "already knew what was coming" and "had already shut down" in fear.

Appellant began "pouting," causing S.M. to ask him what was wrong. He responded, "[T]here's something I wanted to do but you won't let me do it." Appellant then asked S.M. if she had "ever been ate out before." S.M. was shocked, confused, and scared by the question and answered "no."

In response, appellant started rubbing S.M.'s vagina, first over her underwear and then inside it. He inserted one finger into S.M.'s vagina. Appellant then took S.M.'s hand and walked her to his bedroom where he told her to get on her knees and suck his exposed penis. S.M. "did what he told [her]," and the two removed their clothes. Appellant then laid S.M. on his bed, climbed on top of her, and put his penis into her vagina. S.M. testified that she remembered feeling scared and confused as to why appellant, who was like a father to her, was having sex with her.

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

[3] Because S.M. was thirteen years old at the time of the offenses, this Court refers to her by her initials.

After a few minutes, Motley ejaculated on S.M.'s stomach. He then used a water jug and a rag to clean up "his mess."

At trial, the Commonwealth asked S.M. on re-direct examination if she now knew what the term "ate out" meant and she responded, "Yes." When the Commonwealth inquired, "Did that happen on this day, too?", S.M. again answered, "Yes," and said it happened when she and appellant were on the couch. On re-redirect examination, the Commonwealth asked, "[W]hen [appellant] was, as you said, eating you out on the couch, did he stick his tongue in your vagina?" S.M. replied, "Yes." However, on re-recross examination, S.M. said appellant had put his tongue in her vagina while they were in the bedroom on the bed. She denied that it occurred on the couch.

Afterward, appellant and S.M. got dressed, and appellant took her to his friend's house "up the road." S.M. did not tell anyone there what appellant had just done because she was still scared. When they returned to appellant's house later that night, S.M. and appellant again sat on the couch. Appellant took S.M.'s hand, placed it on his penis over his clothes, and told her to "play with it" and "suck it." S.M. obeyed appellant's orders "for a few minutes" but then told him that it "wasn't right." She suggested that Jasmine should be doing these things with him instead. After that, appellant stopped engaging in any sexual behavior with S.M. and they did not speak about it again. Appellant took S.M. home the next day. S.M. did not tell Jasmine or Debra about what happened with appellant, but she did report the incident to her cousin the following day and referenced it in her diary.

Debra later took S.M.'s diary and read it. She then confronted S.M., who appeared terrified that Debra had learned about what happened with appellant. After nearly three hours of convincing by Debra, S.M. finally told her the full details of what had occurred. Debra then called the police and later took S.M. to a forensic nurse examiner.

Deputy Sheriffs A.E. Bolling and M.K. Gibson interviewed S.M., and she reluctantly told them what happened. S.M. was scared, embarrassed, and crying during the interview. Forensic Nurse Examiner Lisa Curtis examined S.M. a month after the incident occurred. Ms. Curtis did not find any injuries on S.M., but she testified that sexual intercourse will not usually cause injuries to a thirteen-year-old girl, and any injury that did occur would heal quickly.

At his trial, appellant moved to strike the evidence after the Commonwealth rested its case. He argued that S.M.'s testimony was "incredible as a matter of law" because she "changed her story on the stand" about where the "sodomy by cunnilingus" occurred. He further argued that S.M.'s incredible testimony about the cunnilingus "taint[ed] her testimony as to the remaining offenses" and that there was no evidence that any of the offenses were accomplished against S.M.'s will "by force, threat, or intimidation." The trial court denied the motion to strike. Appellant did not present any evidence, and the case was submitted to the jury after closing arguments. Thereafter, the jury found appellant guilty of all charges.

ANALYSIS

Appellant's sole assertion on appeal is that S.M.'s inconsistent testimony regarding where the cunnilingus took place—on the couch or in the bedroom—rendered the entirety of her testimony incredible "as a matter of law such that no rational trier of fact could have convicted" him of any of these offenses. This Court disagrees.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the

relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Ordinarily, issues of witness credibility and the weight afforded a witness' testimony 'are matters solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (alteration in original) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989).

> So long as a witness deposes as to facts which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony.

*Id.* "If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court." *Id.*

"Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, as a matter of law, the testimony is inherently incredible.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)). "In other words, this Court

cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" *Lambert*, 70 Va. App. at 759 (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

Appellant's assertion that S.M.'s testimony was, as a matter of law, unworthy of belief is based entirely on one inconsistency in her testimony regarding whether she and appellant were on the couch or in the bedroom when he performed cunnilingus on her. He contends that if this particular detail of S.M.'s account could not be believed, then none of her testimony could be believed.

This Court rejects that argument. Notwithstanding the single inconsistency, S.M.'s account was, in every other way, uncontradicted and consistent. Her testimony included extensive detail and accurately described the offenses for which appellant was on trial. Moreover, she recounted the events to her cousin the next day and described the events in her diary. Given those considerations, a single inconsistency does not render S.M.'s testimony inherently incredible. *See Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) ("Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law.").

Because this Court does not find S.M.'s testimony inherently incredible, the only remaining query is whether the jury could have believed S.M.'s testimony despite the contradiction as to where the cunnilingus took place. The answer to that question is governed by this Court's standard of review.

"Potential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). Moreover, "[w]hen 'credibility issues have been resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Id.* at 291 (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

Although S.M. testified inconsistently about the exact location in appellant's house where he performed cunnilingus on her, she affirmatively testified that the event did occur. Nor did the lone inconsistency undermine S.M.'s account of appellant's other actions, including inserting his finger and then penis into her vagina. And although appellant brought the inconsistency to the jury's attention and argued its importance, the jury was not required to make any factual findings as to which room in the house the offense occurred. Rather, the jury was charged only with the task of determining if it happened at all. Here, S.M. described in detail what appellant did to her, and the jury believed her. *Ashby v. Commonwealth*, 33 Va. App. 540, 548-49 (2000) ("[C]ases involving rape, sodomy[,] and other sexual offenses . . . may be sustained solely upon the testimony of the victim, even in the absence of corroborating evidence.").

Because S.M.'s testimony was neither inherently incredible nor unbelievable as a matter of law, this Court is bound by the jury's resolution of the inconsistency in S.M.'s testimony. Therefore, this Court affirms appellant's convictions.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment and remands to the trial court for correction of the clerical error in the conviction and sentencing orders.

*Affirmed and remanded.*

- 7 -