COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Fulton and Lorish


RICHARD LEE WILLIAMS

                                                MEMORANDUM OPINION*
v.        Record No. 2212-23-1                         PER CURIAM
                                                   NOVEMBER 6, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis III, Judge

(Charles E. Haden, on brief), for appellant.

No brief for appellee.


Richard Williams appeals the circuit court's denial of his motion to strike his charge of

distribution of cocaine, third offense.  Williams argues that the evidence was insufficient to

prove his guilt because it was largely based on the testimony of an unreliable paid confidential

informant (CI).  After examining the briefs and record, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); *see*

*also* Rule 5A:27(a).  Because the credibility of a witness is a matter for the factfinder to determine,

and because the evidence was sufficient for a reasonable factfinder to conclude that Williams

participated in the transaction with the CI, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

STATEMENT OF FACTS[1]

In February 2023, a CI named Larry Mears contacted Sergeant Glen Bailey of the Eastern Shore Drug Task Force (ESDTF). Mears told officers he could set up a purchase of a half-ounce of cocaine from Williams. Mears, who had been in the company of Williams for most of the day, arranged with police to be picked up and brought to a predetermined location. Officers provided Mears with a phone, vehicle, and money for the purchase, and also outfitted Mears with a video/audio recording device. Before the operation, a police officer searched Mears and the vehicle he was provided, and found no contraband on him.

The plan called for Mears to notify officers after completing the controlled buy. While wearing the recording device, Mears arranged to meet Williams at a house in Greenbush. While Mears headed to the house to meet Williams, police remained at the predetermined location to await the signal from Mears that the buy was completed. Inside the house, Mears and Williams disagreed over the amount of cocaine Mears could buy, and Williams only gave him half of the drugs, with the expectation that he return for the other half. Once the transaction was complete, Mears put the camera and the plastic bag on the seat of his car and did not move or alter them in any way. Afterward, Mears and the officers returned to a predetermined location where officers collected the plastic bag and conducted another search of Mears and the vehicle. Task Force Agent Lewis retrieved the plastic bag from the passenger seat of the vehicle. A drug analysis later confirmed that the substance in the bag Mears received contained 2.83 grams of cocaine. Williams was charged with distribution of cocaine, third offense.

---

[1] "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

At trial, Mears testified that he purchased the drugs from Williams. And the Commonwealth introduced the audio and video recordings of the transaction, as recorded by Mears. The Commonwealth also introduced still shots from the video that showed Mears inside the home, holding cash that Mears testified that he gave to Williams. These still shots also showed Williams holding the plastic bag that Mears testified was the bag of cocaine he got from Williams and then later handed over to the officers. Mears also testified that he recognized Williams's voice in the recording talking about the bag and that the recording included their disagreement over the amount of cocaine Mears was supposed to receive.

The video recordings submitted into evidence were intermittent and did not show the full drug transaction. Relevant here, the video recordings do not show a hand-to-hand transaction between Williams and Mears. In addition, based on video evidence and Mears's testimony, there were two other males and one female at the residence at the time of the transaction. Mears testified, however, that he did not trade money or substances with any of the other individuals in the room.

Mears has a criminal history that includes drug distribution charges from 2003, a firearm offense from 2007, and a drug distribution offense from 2017. At the time of trial, he also had pending felony drug charges in Virginia and Maryland. Mears acknowledged during his testimony that he was still on probation for his 2017 distribution offense and was in jail at the time of the trial. Mears denied that he gave information to the task force in exchange for assistance with his legal charges. Instead, Mears testified that he was paid $100 for his cooperation.

At trial, the Commonwealth also provided witness testimony from three of the members of the ESDTF involved in the operation. Williams did not put on any evidence and instead moved to strike the Commonwealth's case on the grounds that Mears, with his extensive

criminal record, was not a credible witness. Williams also argued that because the recording showed other people from whom Mears could have purchased the drugs, and because it did not show a hand-to-hand transaction between Mears and Williams, the Commonwealth had not proved its case beyond a reasonable doubt. The court denied the motion, finding that Mears's testimony was sufficiently corroborated by other evidence. The court found Williams guilty of the distribution of cocaine, third offense. Williams appeals.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). "[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). We will not disturb a credibility finding "on appeal unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011)).

Williams argues that his motion to strike should have been granted because Mears was not a credible witness, and therefore the Commonwealth's evidence failed to prove beyond a reasonable doubt that Mears had purchased cocaine from him. Williams contends that there "exists a hypothesis of innocence consistent with the circumstantial evidence in this case," *Scruggs v. Commonwealth*, 19 Va. App. 58, 63 (1994), which requires us to reverse. According to Williams, the evidence against him was merely circumstantial because Mears was "suspicious" given his extensive criminal record, his history of dealing drugs, and his implausible denials that he testified to receive some benefit related to his pending criminal charges. Williams also argues that the Commonwealth failed to rule out the possibility that one of the other adults present in the residence may have provided Mears the cocaine. He asserts that "the wildly bouncing and jerky video recording" made it unclear whether Mears acquired the cocaine from Williams and that the fact that the recording did not show a hand-to-hand transaction meant that the Commonwealth did not prove its case beyond a reasonable doubt.

Ultimately, Williams asks us to make our own determination about the credibility of Mears's testimony, which is something we cannot do. The trial court was aware of Mears's criminal history, and Williams had the opportunity to question Mears about his prior offenses at trial. Even if Mears had ulterior motives for volunteering as a confidential informant—like getting bond or a reduced sentence—the trial court was well-equipped to weigh the facts and make its own determination about credibility. In addition, as the court found, there was corroborating evidence to support Mears's testimony. Mears was searched before and after the controlled purchase by task force agents who found nothing on his person other than the narcotics he acquired during the operation. Additionally, Mears was monitored throughout the operation, and even though the recording was spotty, it remained on throughout the transaction. Thus, objective evidence supported Mears's testimony that he purchased drugs from Williams.

Williams also argues that the lack of video evidence showing a hand-to-hand transaction is sufficient to cast doubt on whether Williams (rather than someone else in the room) participated in the controlled buy. But our prior cases foreclose this argument. Under similar circumstances, this Court has found that circumstantial evidence can be sufficient to prove a defendant's guilt, even when police could not observe a CI during a drug transaction. For example, where a CI was searched before a controlled buy, and ended up with two ounces of cocaine after the purchase, we found that the circumstantial evidence was sufficient to establish "an unbroken chain of possession of the cocaine" from the defendant to the CI and then to the officer. *Jones v. Commonwealth*, 21 Va. App. 435, 444 (1995). This was true even though the police did not have the CI under constant surveillance. *Id.* We held that "[t]he fact that the officers did not have [the CI] under surveillance the entire time he was away from [law enforcement] does not establish a reasonable hypothesis that someone other than [the defendant] was the source of the cocaine." *Id.* The suggestion that the drugs could have been purchased from someone else was "pure speculation and conjecture." *Id.* at 443; *see also Ray v. Commonwealth*, 74 Va. App. 291, 307-08 (2022) (finding that a CI who was searched before and after a controlled buy, wearing an audio recording device and a GPS tracker, provided sufficient evidence to support a reasonable factfinder's conclusion that the CI obtained drugs from the defendant).

There was plenty of evidence from which a reasonable factfinder could have rejected the hypothesis of innocence that the drugs came from someone other than Williams. First, there was Mears's testimony that he purchased the drugs from Williams, as well as his identification of Williams's voice arguing about the quantity of drugs on the audio recording. As we already discussed, the trial court was entitled to find Mears's testimony credible. Next, the defense did not dispute that Williams was the person depicted in the still photo inside the residence where the

drug transaction took place, or that Williams was holding the plastic bag that contained the drugs that Mears handed over to the investigating officers.  Finally, Mears was searched before and after he went into the residence with the cash he was provided.  Officers found no contraband on him before the controlled buy, and afterward, the cash was gone and replaced by a bag containing cocaine.  We therefore conclude that, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence for a reasonable factfinder to determine that Williams provided Mears with the cocaine.

## CONCLUSION

The trial court's decision denying Williams' motion to strike is not plainly wrong or without evidentiary support.  Thus, we affirm the trial court's judgment.

*Affirmed.*